# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DONALD PIRTLE, ) | |
| Plaintiff, ) | |
| v. ) | NO. 3:15-cv-01069 |
| ) | JUDGE CRENSHAW |
| DRAUGHONS JUNIOR ) | |
| COLLEGE, INC., and DAYMAR ) | |
| HOLDINGS, INC., ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Donald Pirtle filed this action against Defendants Draughons Junior College, Inc., doing business as Daymar Institute, and Daymar Holdings, Inc. (collectively "Daymar"), alleging a violation of the Americans with Disabilities Act, 42 U.S.C. § 12111; the Tennessee Disability Act, Tennessee Code Annotated Section 8-50-103; and retaliatory discharge, in violation of Tennessee Code Annotated Section 50-1-801 and Tennessee common law. Before the Court is Daymar's motion to dismiss. (Doc. No. 10.) For the following reasons, Daymar's motion is **GRANTED**.

I.    ALLEGATIONS

Pirtle is a retired police officer with a master's degree in public service management and a bachelor's degree in criminal justice administration. (Doc. No. 31 at 2.) In 2009, when Pirtle retired from the police force as a result of a heart condition, he had a cardiac defibrillator placed near his heart. (Id.) In 2011, Pirtle began teaching for Daymar at its campus in Nashville, Tennessee.[1] (Id.) He received good performance evaluations from both students and the staff. (Id.)

---
[1] He also taught at Daymar in 2001. (Id.)

In June 2014, Pirtle was demonstrating a technique in his criminal justice class when his right foot slipped and he felt something "pop." (Id. at 3.) He went to an orthopedic physician, who determined that Pirtle had torn his calf muscle. (Id.) In July 2014, Pirtle underwent surgery for his calf, paid for by his workers' compensation insurance. (Id.) His treating physician advised him to take two weeks off work to recover from the surgery. (Id.) Additionally, Pirtle's treating physician informed him that he needed to replace his cardiac defibrillator. (Id.)

On August 20, 2014, Pirtle sent a text message to the Criminal Justice Director at Daymar, Scott Roberts, to let him know that he had to get his defibrillator replaced. (Id.) The next day Roberts texted Pirtle, informing him that he could schedule the surgery because he did not have any classes scheduled for the upcoming semester. (Id.) This would be the first semester since 2011 that Pirtle was not teaching multiple classes at Daymar. (Id.) On September 6, 2014, Pirtle checked Daymar's online schedule and saw the three classes that he previously taught listed with a professor "to be announced." (Id. at 4.) After Pirtle inquired about those classes, Daymar assigned individuals from Murfreesboro to teach them in Nashville. (Id.) After realizing that Daymar did not assign him any classes, Pirtle filed an EEOC complaint. (See Doc. No. 1 at 1.) The EEOC issued Pirtle a right to sue letter. (Id.)

II.     STANDARD OF REVIEW

When reviewing a motion to dismiss, the Court must take all the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which are accepted as true, to state a claim for relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

III.  ANALYSIS

On October 6, 2015, Pirtle filed the complaint against Daymar (Doc. No. 1), which he amended on February 1, 2016. (Doc. No. 31.) Rather than answering the complaint, Daymar filed this motion to dismiss. (Doc. No. 10.)

A.  THE ADA CLAIM

Regarding Pirtle's ADA claim, Daymar argues that Pirtle did not allege that he has a disability. (Doc. No. 11 at 3.) Daymar further argues that Pirtle does not allege that it had a record of Pirtle's impairment, or regarded Pirtle as having the impairment. (Id. at 5.) Pirtle responds that his heart condition—idiopathic dilated cardiomyopathy—is his disability. (Doc. No. 13 at 8.) He further contends that Daymar was aware of his disability. (Id.)

Under the ADA, a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2009). The court uses the McDonnell-Douglas burden-shifting framework in evaluating whether a plaintiff alleges a violation of the ADA. Kocis v. Multi-Care Management, Inc., 97 F.3d 876, 882 (6th Cir. 1996) (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Under this framework, the plaintiff must prove "(1) [he] was "disabled" within the meaning of the Act; (2) [he] was qualified for the position, with or

without an accommodation; (3) [he] suffered an adverse employment decision with regard to the position in question; and (4) a non-disabled person replaced [him] . . . ." Id.

The ADA regards someone as disabled if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A) (2009). To be regarded as disabled, the employer would have had to believe that the employee's "actual, nonlimiting impairment substantially limits one or more major life activities." Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999). "When the major life activity at issue is working, the statutory phrase 'substantially limits' . . . [requires] proof that the employer regarded the employee as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Johnson v. University Hospitals Physician Servs., 617 Fed. Appx. 487, 491 (6th Cir. July 7, 2015) (quoting Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 704 (6th Cir. 2008)).

Pirtle does not allege—even with conclusory allegations—in his complaint or response to the motion to dismiss that his heart condition "substantially limits one or more major life activities." A reasonable inference from the allegations in his complaint is that Pirtle is able to perform his major life activities competently. Even if the Court reads the complaint to allege that Pirtle is substantially limited from working, it appears from the complaint that Daymar highly-regarded Pirtle as a teacher regardless of his heart condition. (Doc. No. 31 at 2.) Nothing in the complaint suggests that Daymar regarded Pirtle as "significantly restricted" in any way. Johnson, 617 Fed. Appx. at 491. Therefore, Pirtle does not allege sufficient facts, even if taken as true, to show that he is "disabled" as defined in the ADA. Since Pirtle does not allege that he was disabled, he cannot prove that Daymar discriminated against him as a result of a disability.

B. REMAINING CLAIMS

Pirtle's remaining claims arise from violations of state law. Pirtle's only allegation for the Court's jurisdiction over the state law claims is that they are tied to his federal ADA claim. (Doc. No. 32 at 1.) The complaint does not establish on its face that there is also diversity jurisdiction in this case. 28 U.S.C. § 1332(a) and (c) (2006); (See Doc. No. 31 at 2 (alleging the principal addresses of the defendant corporations, but not whether the amount in controversy exceeds $75,000 nor the state in which the defendant corporations are incorporated)).

The Court may decline to exercise supplemental jurisdiction over the state law claims if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (2006). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Factors that weigh in favor of retaining supplemental jurisdiction include (1) if the plaintiff engages in forum shopping, (2) if the parties had completed discovery, or (3) if there are ripe motions for summary judgment. Id. (citing Harper v. AutoAlliance Intern., Inc., 392 F.3d 195, 211-12 (6th Cir. 2004)).

Here, after weighing the relevant factors, the Court declines to retain supplemental jurisdiction over the state law claims. Therefore, the Court will dismiss these claims without prejudice to Pirtle re-filing them in the appropriate court.

IV.     CONCLUSION

For the foregoing reasons, Daymar's motion to dismiss (Doc. No. 10) is **GRANTED**. Plaintiff does not state a claim upon which relief can be granted under the Americans with Disabilities Act, and that claim is **DISMISSED WITH PREJUDICE**. The Court declines to retain supplemental jurisdiction over the state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

The Court will file an accompanying order.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE